UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SIMON PROPERTY GROUP, L.P.,

                              Plaintiff,

                                                           21-cv-7850 (PKC)
               -against-
                                                           OPINION AND ORDER


U.S. BANK NATIONAL ASSOCIATION,

                              Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

               Plaintiff Simon Property Group, L.P. ("SPG") alleges that defendant U.S. Bank

National Association ("U.S. Bank") breached its contractual obligation to defend and indemnify

SPG in a patent infringement action brought against SPG by AlexSam, Inc. ("AlexSam") in the

Eastern District of Texas (the "AlexSam Action").[1]  Pending before the Court is SPG's motion

for summary judgment against U.S. Bank that seeks specific performance of the contractual duty

to defend and indemnify SPG in the AlexSam Action.  (Doc 73.)  Rule 56, Fed. R. Civ. P.  In

addition to opposing SPG's motion for summary judgment, U.S. Bank, as non-movant, seeks

summary judgment in its favor dismissing SPG's claim.  Rule 56(f)(1), Fed. R. Civ. P.  (Doc 17

(U.S. Bank Br.) at 2; Doc 60 (U.S. Bank Supp. Br.) at 1.)

               This Court has raised an issue of subject matter jurisdiction arising from the

following circumstances.  Indisputably, there was federal question jurisdiction over the patent

claims of AlexSam against SPG in the AlexSam Action.  The third-party claim presently pending

before this Court was brought by SPG against U.S. Bank as part of the AlexSam Action and

---

[1] This action was severed from AlexSam, Inc. v. Simon Prop. Grp., L.P., et al., No. 2:19-cv-00331 (E.D. Tex.) and transferred to this Court on September 21, 2021.

invoked the Court's supplemental jurisdiction as one of the grounds for subject matter jurisdiction, along with diversity of citizenship.  Judge Rodney Gilstrap of the Eastern District of Texas severed and transferred the third-party claim to this Court because of an exclusive forum provision in the parties' agreement.  Upon transfer, this Court inquired and learned that, at the time the third-party claim was brought and also at the time of severance, members of the SPG limited partnership were citizens of Ohio, the place of U.S. Bank's principal place of business thus foreclosing the invocation of diversity jurisdiction.  But applying the time-of-filing rule, this Court now concludes (as more fully addressed below) that there was supplemental jurisdiction over the third-party complaint at the time it was filed and that the severance and transfer of the claim to this Court on venue grounds did not extinguish that supplemental jurisdiction.  Thus, this Court properly exercises subject matter jurisdiction in this case.

For the reasons also addressed below, SPG's summary judgment motion will be denied and U.S. Bank's non-movant's application for summary judgment in its favor will be denied.

BACKGROUND

The following facts are undisputed, unless otherwise noted.  The Court draws all reasonable inferences in favor of non-movant U.S. Bank in resolving SPG's motion for summary judgment, and draws all reasonable inferences in favor of SPG in resolving U.S. Bank's request for summary judgment as a non-movant under Rule 56(f)(1).

On July 7, 2005, U.S. Bank and SPG entered into a Prepaid Gift Card Agreement, which was amended and restated on September 1, 2008, amended again on October 5, 2010, and continued through August 31, 2014 as the Amended and Restated Gift Card Agreement (the "Agreement").  (Doc 22 (Rule 56.1 Statement Responses) ¶ I.1.)  Under the Agreement, U.S. Bank issued and maintained prepaid gift cards—some of which are at issue in the AlexSam

Action—that were distributed through retail shopping centers, websites or other distribution channels owned or operated by SPG.  (Id. ¶¶ I.1-2.)

Article 7 of the Agreement provides for indemnification of SPG by U.S. Bank under specified circumstances:

> 7.1   Indemnification of [SPG].  From the date of and after the termination of this Agreement, U.S. Bank shall indemnify, defend and hold [SPG] harmless against:
>
>> (a)   any and all out-of-pocket expenses or losses, liabilities, damages, costs or other direct expenses arising out of or consisting of claims or counterclaims of Third Persons directly or indirectly related or attributable to:
>>
>>> (i)   U.S. Bank's or its agent's or employee's violation (or act causing [SPG] to be in violation) of any Applicable Law, including claims based on assessment of any fees associated with the Program as a violation of statutory or common law;
>>>
>>> (ii)   U.S. Bank's or any of U.S. Bank's agents' or employees' negligence or willful misconduct;
>>>
>>> (iii)   any claim or problem arising in connection with U.S. Bank's responsibilities under the Program; . . . .
>>
>> (c)   any and all actions, suits, proceedings, demands, assessments, judgments, costs and expenses, and any reasonable attorneys' fees, consultant's fees or court costs incident to any of the foregoing, except for any loss due to the wrongful or negligent act of [SPG] or its agents or employees.

(Doc 73-4 (Agreement) art. 7.1; Doc 22 ¶ I.4.)  As also relevant here, Article 7 also requires SPG to notify U.S. Bank in a "reasonably prompt manner" of any claim for which it seeks to be indemnified:

> 7.4   Indemnification Procedures.  As a condition to indemnification hereunder, the indemnified party shall notify the indemnifying party in a reasonably prompt manner of any claim

>that is asserted and each action or suit that is filed or served (any of
>the foregoing being a "Claim") for which the indemnified party is
>seeking indemnification pursuant to this Article 7. . . .

(Agreement art. 7.4.)

On October 11, 2019, AlexSam filed its initial complaint against SPG, alleging infringement of U.S. Patent No. 6,000,608 (the "'608 Patent") through various gift card programs administered by SPG, which SPG distributed through retail shopping centers and websites or other distribution channels owned or operated by SPG.  (Doc 22 ¶ I.1, I.7.) According to SPG, it first became aware of the action by AlexSam when it was served with process on November 14, 2019.  (SPG Supp. Br. at 4.)  On January 29, 2020, AlexSam filed its First Amended Complaint, alleging that SPG infringed the now expired '608 Patent by using or offering for sale, among other things, the "Visa Simon Giftcard," the "5% Back Visa Simon Giftcard," and the "American Express Simon Giftcard."  (Doc 22 ¶ I.7.)

On May 18, 2020, SPG notified U.S. Bank of the action brought by AlexSam and sought to have U.S. Bank indemnify, defend and hold SPG harmless against AlexSam's claims, relying on the parties' Agreement.  (Id. ¶ I.8.)  U.S. Bank declined to intervene to defend or indemnify SPG in the AlexSam Action.  (Id. ¶ I.9.)  This action followed.  (Id. ¶ I.10.)

SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law. . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).  On a motion for summary judgment, the court

4

must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y, 575 F.3d at 204 (internal citations omitted).

A district court may grant summary judgment in favor of a non-movant so long as the party against whom judgment is entered has been provided by the court with notice and a reasonable time to respond.  Rule 56(f)(1), Fed. R. Civ. P.

DISCUSSION

      A.    <u>Subject Matter Jurisdiction and Choice of Law</u>

The Court concludes that it has supplemental jurisdiction over SPG's breach-of-contract claim and that Minnesota law applies to SPG's claim against U.S. Bank.

      i.    <u>Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction.  <u>See, e.g.</u>, <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013).  "An argument that subject-matter jurisdiction is lacking may be raised at any time, by any party, or even *sua sponte* by the court."  <u>Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.</u>, 175 F.3d 132, 140 (2d Cir. 1999).  As related to the issue of subject matter jurisdiction, the Court issued orders on May 23, 2022 and June 7, 2022 directing SPG to set forth the citizenship of its members to determine whether diversity jurisdiction existed.  28 U.S.C. § 1332(a).  The Court then issued an order on June 15, 2022, directing the parties to state their positions regarding the Court's exercise of supplemental jurisdiction.  The Court has received and reviewed the parties' submissions, filed on June 23, 2022.  (Doc 81, 82.)

In bringing its state law claim, filed in the Eastern District of Texas on September 1, 2020 and severed on September 17, 2021, SPG submitted two potential bases for the exercise of federal subject matter jurisdiction over this dispute.  First, SPG argued that the Eastern District of Texas had supplemental jurisdiction over SPG's state law claim against U.S. Bank because the claim for defense and indemnification was part of the same case or controversy as AlexSam's patent infringement claim against SPG, over which the Eastern District of Texas had

original federal question jurisdiction.  Second, SPG argued that the Court also had diversity

jurisdiction over SPG and U.S. Bank because "the parties are citizens of different states and the

matter in controversy exceeds the sum or value of $75,000."  (Compl. ¶ 4.)

   As to the latter, SPG is incorrect.  Diversity jurisdiction never existed over the

third-party claims because the parties were not diverse at the time of filing.  It has long been

recognized that the jurisdiction of a federal court "depends upon the state of things at the time of

the action brought."  Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (quoting Mollan v.

Torrance, 22 U.S. 537, 539 (1824)).  See also Herrick Co., Inc. v. SCS Cmmc'ns, Inc., 251 F.3d

315, 329 (2d Cir. 2001) ("The existence of federal jurisdiction over a case initially filed in

federal court ordinarily depends on the facts as they stood when the complaint was filed.")

(citing Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957)).  For purposes of diversity jurisdiction,

limited partnerships such as SPG have the citizenship of each of its general and limited partners,

Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 52 (2d Cir. 2000) (citing Carden

v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990)), while national banks have the citizenship of

the state where its main office, as designated in its articles of association, is located, Wachovia

Bank, N.A. v. Schmidt, 546 U.S. 303, 307 (2006).  Both at the time of filing of the third-party

complaint and the time of severance of the claim, SPG had limited partners who were

domiciliaries of Ohio and therefore had, among others, Ohio citizenship for purposes of diversity

jurisdiction.  (Doc 79.)  And because at the time of the filing of the complaint and severance of

the action, U.S. Bank's main office was in Ohio, U.S. Bank was also a citizen of Ohio for

purposes of diversity jurisdiction.

   But this Court concludes that at the time of filing in the Eastern District of Texas,

SPG properly invoked the Court's supplemental jurisdiction and the subsequent severance of the

7

third-party claim on venue grounds did not extinguish that supplemental jurisdiction.  AlexSam

properly invoked federal question jurisdiction on its patent infringement claim against SPG.

SPG's claim against U.S. Bank for defense and indemnification were directly related to the

patent infringement claim such that they formed part of the same case or controversy pursuant to

28 U.S.C. § 1367(a).  Therefore, SPG properly invoked the Court's supplemental jurisdiction

over the state law claim asserted in the third-party complaint.

As noted, it has long been recognized that the jurisdiction of a court "depends

upon the state of things at the time of the action brought."  Keene Corp., 508 U.S. at 207

(quoting Mollan, 22 U.S. at 539).  See also Herrick, 251 F.3d at 329 ("The existence of federal

jurisdiction over a case initially filed in federal court ordinarily depends on the facts as they

stood when the complaint was filed.") (citing Smith v. Sperling, 354 U.S. at 93 n.1).  When

SPG's complaint against U.S. Bank was filed before the Eastern District of Texas on September

1, 2020, subject matter jurisdiction was available over SPG's claim against U.S. Bank because of

the Court's ability to exercise supplemental jurisdiction.  The severance and transfer to this Court

did not call into question whether the claim against U.S. Bank was part of the same case or

controversy as the patent claim against SPG.  It was severed and transferred because of a forum-

selection clause between SPG and U.S. Bank.  (Doc 1 (Sept. 17, 2021 Order) at 4-5.)  Applying

Supreme Court and Second Circuit precedent to this case then, would result in the continued

existence of federal jurisdiction—specifically, supplemental jurisdiction—for this Court to

adjudicate the instant state law claim for breach of contract.

A conclusion implicit in this result is that here, the September 17, 2021 severance

did not create a "new" action—that it did not establish a new case initiation date for the purposes

of determining federal jurisdiction.  The Court notes that this conclusion is directly at odds with

the precedent of other Circuits.  The Ninth and Fifth Circuits have held that "[a] severed action must have an independent jurisdictional basis.  It can no longer rely on the supplemental jurisdiction afforded by 28 U.S.C. § 1367(a), for there is nothing left to supplement."  Herklotz v. Parkinson, 848 F.3d 894, 898 (9th Cir. 2017) (citing Honeywell Int'l, Inc. v. Phillips Petroleum Co., 415 F.3d 429, 431-32 (5th Cir. 2005)).[2]

But in Herklotz, which cites to opinions issued by the Seventh, Eighth, and Fifth Circuits, the Ninth Circuit did not cite to any holding that a severed claim is not only an independent action, but also a *new* action.  In Gaffney, the Seventh Circuit held that "[a]s a general matter, Rule 21 severance creates two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability."  Gaffney, 451 F.3d at 441.  In E.S., the Eighth Circuit similarly held that "[w]hen a single claim is severed from a lawsuit, it proceeds as a discrete, independent action, and the trial court may render final appealable judgment on the severed claim, notwithstanding continued existence of unresolved claims in the remaining action."  E.S., 134 F.3d at 568.  The final case cited by the Ninth Circuit is the Fifth Circuit's opinion in United States v. O'Neil, which also forms the basis for the Fifth Circuit's rule that severed claims become "independent actions requiring an independent jurisdictional basis."  United States v. O'Neil, 709 F.2d 361, 375 (5th Cir. 1983).  See also Honeywell, 415 F.3d at 431-32 (citing O'Neill, 709 F.2d at 375).  But in O'Neil, the Fifth Circuit also provided no authority or citation for the requirement that a severed action requires an independent

---

[2] While the transferring court, the Eastern District of Texas, is bound by Fifth Circuit law, "the weight of well-reasoned authority supports the application of the substantive federal law of the transferee court when an action is transferred under § 1404(a).  Federal courts are competent to decide issues of federal law and should not be placed in the awkward position of having to apply the federal law of another circuit when it conflicts with their own circuit's interpretation.  The Court will decide the issues . . . in conformity with the law of the Second Circuit."  Center Cadillac, Inc. v. Bank Leumi Tr. Co. of N.Y., 808 F. Supp. 213, 224 (S.D.N.Y. 1992).  See also Rosado-Acha v. Red Bull Gmbh, 15 Civ.7260 KPF, 2016 WL 3636672, at * 5 (S.D.N.Y. June 29, 2016) (Failla, J.) (quoting Center Cadillac, 808 F. Supp. at 224).

jurisdictional basis in addition to the jurisdictional determination based on facts at the filing of the initial complaint.  See O'Neil, 709 F.2d at 375.  The Fifth Circuit, while recognizing that "[i]n assessing whether the district court had subject matter jurisdiction, [courts] generally look to the time at which the action commenced," Honeywell, 415 F.3d at 431, would impose a second, subsequent examination for federal jurisdiction upon severance, without, as far as this Court can tell, supporting legal authority.

Taking account of the respect due these decisions of Circuit Courts, this Court concludes that where federal question jurisdiction is properly invoked in an action and supplemental jurisdiction is properly exercised over a state law claim that is part of the same case or controversy, the subsequent severance of that claim does not extinguish supplemental jurisdiction.  This holding honors the time-of-filing doctrine, which generally dispenses with the need for a district court to reassess its subject matter jurisdiction based upon a post-filing change in circumstances.  Of course, the grounds for severance may reflect that the severed state law claim was never properly part of the same case or controversy.  But that is not the circumstance here.  Neither does anything in this Court's ruling conflict with the text of section 1367 that provides that a district court "may *decline* to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3) (emphasis added).  This discretion exists even when, after dismissal of certain claims, the action no longer has original jurisdiction claims "left to supplement."  Herklotz, 848 F.3d at 898.  Accordingly, while severance, like dismissal, may also orphan a claim, the elimination of original jurisdiction claims alone does not divest this Court of its discretion to decline (or continue) to exercise supplemental jurisdiction over the remaining claim.  The Second Circuit recognizes a severed claim as an independent action, but has not insofar as this

10

Court is aware described it as a "new" action which must satisfy an independent jurisdictional test upon severance.  See Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968) ("Where certain claims are properly severed, the result is that there are then two or more separate 'actions.'"); AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699 (2d Cir. 2010) ("Once the Texas District Court severed the Tort and Contract Claims and Counterclaims from the Declaratory Claims and Counterclaims, they became two separate actions.").  See also Verzani v. Costco Wholesale Corp., 387 Fed. App'x 50, 52 (2d Cir. 2010) (quoting Federal Practice and Procedure § 1689 (2d ed. 2001) for the principle that "[o]nce a claim has been severed . . . it proceeds as a discrete unit with its own final judgment, from which an appeal may be taken.").

        The AlexSam Action in the Eastern District of Texas concluded on March 18, 2022.  (AlexSam Action Doc 441.)  Had severance and transfer not taken place, indisputably the judge presiding could decline to exercise supplemental jurisdiction or, instead, continue to do so. Assuming, as this Court does, that it has the power under section 1367 to decline to exercise supplemental jurisdiction, the Court will continue to exercise jurisdiction for two reasons.  First, no party has asked it to decline to exercise supplemental jurisdiction[3] and, second, balancing the considerations of judicial economy, convenience, fairness and comity supports the exercise of

---

[3] This Court issued an Order requesting the parties to brief the issue of supplemental jurisdiction on a severed claim citing precedent from the Ninth and Fifth Circuits, as well as the Supreme Court's time-of-filing jurisprudence. (Order of June 15, 2022; Doc 80.)  U.S. Bank briefed the issue, maintained that the Court did have supplemental jurisdiction and urged the Court to exercise that jurisdiction.  (Doc 81.)  SPG's response did not meet the Court's Order head on.  It asserted that SPG "consents to this Court maintaining jurisdiction and presiding over the summary judgment decision" (Doc 82 at 1.), undoubtedly aware that parties' consent cannot cure a lack of subject matter jurisdiction.  It argued that if the Court concluded that the action was "improperly transferred," then it should "retransfer" the action back to the Eastern District of Texas "in the interests of justice as well as judicial economy" rather than dismiss for want of subject matter jurisdiction.  (Id. at 2.)  Of course, this Court's Order did not express any view or doubt on the propriety of transfer and, if there were a lack of subject matter jurisdiction, then the Court would not be empowered to transfer the action.

11

supplemental jurisdiction despite the dismissal of the federal patent claim in the AlexSam

Action.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

   The interests of judicial economy, convenience and fairness support the exercise

of jurisdiction because of the advanced posture of the case.  Specifically, when this case was

severed and transferred, (1) briefing already had commenced for SPG's pending motion for

summary judgment; (2) fact discovery had been substantially completed save for a small number

of witness depositions; and (3) there existed an Amended Protective Order issued by the Eastern

District of Texas on February 8, 2021 (E.D. Tex. Doc 190), on which the parties relied in

significant part to file before this Court eight motions to seal materials submitted in relation to

the adjudication of SPG's motion for summary judgment.  The advanced procedural posture of

the third-party claim also demonstrates that treating the claim as a "new" action simply does not

fit the facts.

   The interests of comity are not offended because the Agreement underlying the

indemnification claim designates the law of Minnesota as governing, but the venue provision

requires the claim to be heard "in federal court in New York."  (Agreement art. 15.6; Sept. 17,

2021 Order at 2.)  No party has proposed a theory under which venue would be proper in

Minnesota.  Thus, a federal court in New York is not overreaching in deciding a question of

Minnesota law.

   Accordingly, this Court will continue to exercise supplemental jurisdiction over

the third-party complaint.

   ii.  Choice of Law

   A federal court adjudicating a supplemental state law claim applies the choice of

law rules of the forum state, here New York.  See N. Atl. Instruments, Inc. v. Haber, 188 F.3d

38, 43 (2d Cir. 1999).  "Under New York law, 'courts will generally enforce choice-of-law clauses,' . . . because 'contracts should be interpreted so as to effectuate the parties' intent.'"  Id. (quoting Minsters & Missionaries Benefit Bd. v. Snow, 26 N.Y.3d 466, 470 (2015)).  "While there is no magical incantation that parties must utter . . . the clause must clearly manifest the parties' intent to be governed by the laws of a particular jurisdiction."  Id.  (citing Welsbach Elec. Corp. v. MasTec N. Am., Inc., 7 N.Y.3d 624, 629 (2006)).

The Court concludes that Article 15.6 of the Agreement, titled "Governing Law and Forum," clearly manifests the parties' intent to be governed by the laws of the State of Minnesota for purposes of this contractual dispute. [4]  (See Agreement art. 15.6 ("This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Minnesota.").)

B.    Notice "In a Reasonably Prompt Manner"

The parties do not dispute that under the Agreement, U.S. Bank must defend, indemnify, or otherwise hold harmless SPG, provided certain prerequisites under the Agreement are met.  The parties do dispute whether certain prerequisites have been met, specifically the requirement under Article 7.4 of the Agreement to notify U.S. Bank "in a reasonably prompt manner" of the claim for which defense and indemnification is sought.

The Court concludes that under Minnesota law, the notice requirement under the Agreement is a condition precedent and that a reasonable factfinder could find that SPG's notice to U.S. Bank, provided more than six months after service upon SPG of the initial complaint in the AlexSam Action, was not "reasonably prompt" as required under the Agreement.

---

[4] Furthermore, the "parties' briefs assume that [Minnesota] law controls, and such implied consent [is also] sufficient to establish choice of law" under New York choice-of-law rules.  Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014).

Accordingly, because a genuine dispute exists as to a material fact, the Court will deny SPG's motion for summary judgment.

       i.    <u>Condition Precedent</u>

Under Minnesota law, "[u]nambiguous contract language must be construed according to its plain and ordinary meaning." <u>Buchwald v. Univ. of Minn.</u>, 573 N.W.2d 723, 726 (Minn. Ct. App. 1998) (citing <u>Bob Useldinger & Sons, Inc. v. Hangsleben</u>, 505 N.W.2d 323, 328 (Minn. 1993)).  In so doing, the "objective of judicial construction of contracts is to allow the intent of the parties to prevail." <u>Id.</u> (citing <u>Turner v. Alpha Phi Sorority House</u>, 276 N.W.2d 63, 66 (Minn. 1979)).  This interpretive principle also applies to agreements to indemnify, which are treated as contracts.  <u>See</u> <u>id.</u>

If a timely notice is a "condition precedent," meaning "an event, not certain to occur, which must occur before performance under a contract becomes due," <u>Seman v. First State Bank of Eden Prairie</u>, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986) (quoting Restatement (Second) of Contracts, § 224 (1981)), noncompliance with the condition precedent is fatal to recovery under the contract, even without the showing of prejudice caused by the noncompliance.  <u>See</u> <u>Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.</u>, 857 F.3d 783, 787 (8th Cir. 2017) (citing <u>Cargill, Inc. v. Evanston Ins. Co.</u>, 642 N.W.2d 80, 87 (Minn. Ct. App. 2002)). A court should "not construe the contract to have a condition precedent" unless the language of the contract "unequivocally express[es] an intent of the parties to establish a condition precedent." <u>Mrozik Constr., Inc. v. Lovering Assocs., Inc.</u>, 461 N.W.2d 49, 52 (Minn. Ct. App. 1990).

Applying Minnesota state law, the Court concludes that the notice requirement under Article 7.4—which provides that "[a]s a *condition* to indemnification to hereunder, the

indemnified party *shall* notify the indemnifying party in a reasonably prompt manner of any claim that is asserted and each action or suit that is filed or served . . . for which the indemnified party is seeking indemnification pursuant to this Article 7," (Agreement art. 7.1 (emphases added))—is a condition precedent, as it lays out "an event, not certain to occur, which must occur before performance under a contract becomes due," here, defense and indemnification. Seman, 394 N.W.2d at 560.

If prompt notice had been a mere contractual requirement, rather than a condition precedent, the indemnifying party would be required to show that it was prejudiced by the delay. See Farrell v. Neb. Indem. Co., 235 N.W. 612, 614 (Minn. 1931) ("To hold that defendant under the circumstances should be absolved from liability because of the failure to give earlier notice would be unreasonable . . . .  The record does not disclose that defendant was in any way prejudiced by the delay.").  See also Schoffman by Schoffman v. Blue Cross and Blue Shield of Minn., 557 N.W.2d 625, 627 (Minn. Ct. App. 1997) (noting in the context of an insurance contract dispute, the "general rule" that a mere breach of a contractual provision, such as a notice provision, will not lead to forfeiture of benefits under the insurance contract "absent a showing that the insurer has been prejudiced.").  No such requirement exists as to a condition precedent. See Cargill, 642 N.W.2d at 87.  Accordingly, the Court need not determine whether any noncompliance by SPG regarding the "reasonably prompt" notice requirement resulted in prejudice to U.S. Bank.

ii.    "Reasonably Prompt" Notice

The Court concludes that under Minnesota law, a reasonable jury could find that SPG's notice to U.S. Bank regarding the AlexSam Action was not provided in a "reasonably

prompt" manner as required under the Agreement.

Construing "reasonably prompt" according to its plain and ordinary meaning, Buchwald, 573 N.W.2d at 726, a "reasonably prompt" notice would appear to be notice that is immediate, as fair or proper under the circumstances.  See Black's Law Dictionary (9th ed. 2009) (defining reasonable as "[f]air, proper, or moderate under the circumstances"); Oxford English Dictionary (3d ed. 2007) (defining prompt as "done, performed, etc., without delay; immediate"). See also Black's Law Dictionary (9th ed. 2009) (defining prompt in its verbal form as "[t]o incite, esp. to *immediate* action." (emphasis added)).

As to the application of the term "reasonable promptness" in Minnesota law, the Supreme Court of Minnesota, in adjudicating an indemnification dispute between an insurer and a company facing suit for the negligent killing of a dog by one of its trucks, held that the company had delivered the summons and complaint to its insurer "with reasonable promptness" when it forwarded the papers three days after being served.  Hinz v. Northland Milk & Ice Cream Co., 53 N.W.2d 454, 456 (Minn. 1952).  See also Tousley v. Howe, 116 N.W.2d 590, 592 (Minn. 1962) (citing Hinz, 53 N.W.2d at 456) (holding that defendants who, through no fault of their own, belatedly discovered motions papers and immediately delivered them to their insurer, delivered those papers "with reasonable promptness").

SPG relies upon a confluence of factors that, in its view, renders its notice to be reasonably prompt, such as the time SPG needed to evaluate whether its Agreement with U.S. Bank was implicated, the need to address other matters raised by the AlexSam Action, and complications related to the holiday shopping season (as applied to a major operator of retail shopping malls) and the COVID-19 pandemic.  But in light of the plain reading of the term "reasonably prompt" and state law precedent associating "reasonable promptness" with a period

of days, not weeks or months, the Court concludes that a reasonable jury could find that SPG did not provide U.S. Bank with "reasonably prompt" notice under these circumstances.

Accordingly, after construing the facts in the light most favorable to U.S. Bank and resolving all ambiguities and drawing all reasonable inferences against SPG, the Court concludes that there remains a dispute regarding a material fact and will deny SPG's motion for summary judgment.

C.    Whether U.S. Bank Is Entitled to Summary Judgment

U.S. Bank urges the Court to enter summary judgment in its favor for two independent reasons: (1) SPG has failed to show that its May 18, 2020 notice was "reasonably prompt" as required under the Agreement, and (2) even if timely notice had been given, no claim in the AlexSam Action triggered its duty to defend or indemnify.  The Court declines to grant summary judgment on either ground for non-movant U.S. Bank pursuant to Rule 56(f)(1), Fed. R. Civ. P.

In determining whether U.S. Bank, not SPG, is entitled to summary judgment, the Court views the facts in the light most favorable to SPG and resolves all ambiguities and draws all reasonable inferences against U.S. Bank.  In so doing as to timeliness of notice, the Court concludes that a reasonable jury could find that SPG provided "reasonably prompt" notice under Minnesota law.  As noted, under a both plain reading of the term "reasonably prompt" and state law precedent associating "reasonable promptness" with a period of mere days—not weeks or months—a "reasonably prompt" notice would equate to notice that is immediate as fair or proper under the circumstances.

While SPG did not immediately notify U.S. Bank after filing of the AlexSam Action or service of the initial complaint upon SPG, SPG argues that its delay was reasonable,

emphasizing that it took a significant amount of time to investigate and identify the implicated prepaid card programs and subsequently, parties from whom SPG could seek defense and indemnification.  SPG also argues that this complex investigation was delayed by the holiday shopping season, the COVID-19 pandemic, and time-consuming litigation practice before the Eastern District of Texas prior to the severance and transfer of this action, including the filing of an Amended Complaint on January 29, 2020.  Taking into account the totality of these factors, a reasonable jury could find that the May 18, 2020 notice to U.S. Bank was "reasonably prompt," meaning, immediate as fair or proper under these specific circumstances.  The Court therefore concludes that a material issue of fact remains as to whether SPG provided "reasonably prompt" notice and declines to grant summary judgment in favor of U.S. Bank on this basis.

      As an alternative ground for summary judgment in its favor, U.S. Bank submits that under the Agreement, it would not be obliged to defend and indemnify SPG against AlexSam's claim of patent infringement even if timely notice had been given.  In essence, U.S. Bank argues that because the Agreement imposes reciprocal provisions for defense and indemnification on both SPG and U.S. Bank, this reciprocal structure demonstrates the parties' intent at the time of contracting that they "never intended to impose a one-way obligation requiring U.S. Bank to defend and indemnify SPG against AlexSam's patent infringement claims."  (U.S. Bank Br. at 17.)  The Court declines to adopt this reading of the Agreement.

      The Agreement states, inter alia, that "U.S. Bank shall indemnify, defend and hold [SPG] . . . harmless against: (a) any and all out-of-pocket expenses or losses, liabilities, damages, costs or other direct expenses arising out of or consisting of claims or counterclaims of third Persons directly or indirectly related or attributable to: . . . (iii) *any claim or problem arising in connection with U.S. Bank's responsibilities* under the Program[.]"  (Agreement art.

18

7.1 (emphasis added).)  Under the Agreement, U.S. Bank's responsibilities included "Card Issuance" and "Usage."  (Agreement art. 4.1.)

AlexSam sued SPG, alleging that SPG had infringed AlexSam's '608 Patent, which relates to the use and sale of certain Visa prepaid gift cards.  In its opening papers, AlexSam alleged that SPG "is in the business of selling and offering" the at-issue cards, and that SPG "owns, operates, or leases all equipment in the infringing system, or alternatively exercises direction and control over the operation of all equipment in the infringing system in order to provide the benefit of electronic gift certificate cards and loyalty cards to its customers." [5]  (E.D. Tex. Compl. ¶ 75.)

Based on (1) the nature of AlexSam's claim against SPG, which implicates the issuance and use of prepaid cards governed by the parties' Agreement; (2) U.S. Bank's responsibilities under the Agreement to manage the issuance and usage of the prepaid cards at issue; and (3) the Agreement's clear and broad language that U.S. Bank's duty to defend and indemnify SPG under the Agreement extends to "any claim or problem arising in connection with U.S. Bank's responsibilities under the Program," the Court concludes that a reasonable jury could find that U.S. Bank is obligated to defend and indemnify SPG against AlexSam's claim. In other words, a reasonable jury could find that based on the plain language of the Agreement and AlexSam's allegations, the AlexSam action against SPG implicates "U.S. Bank's responsibilities under the [Agreement,]" and could trigger U.S. Bank's duty to defend and indemnify SPG.

This conclusion is also consistent with the deposition testimony of U.S. Bank's corporate witness, Cindy Carvelli-Yu.  Ms. Carvelli-Yu stated that in the context of U.S. Bank's

---

[5] The Amended Complaint in the AlexSam action also contains similar allegations regarding the sale and operation of the at-issue cards.  (See E.D. Tex. Am. Compl. ¶¶ 85-86.)

business relationships with companies like SPG for setting up gift card programs, "it was important that people knew we were the card issuer," that "U.S. Bank managed this program," and that U.S. Bank was "at the forefront of setting up programs that were in compliance with state and federal law" because it was looked at as being an expert in the area.  (Doc 65-2 (Carvelli-Yu Dep. Transcr.) at 64, 57.)

Accordingly, the Court concludes that a material issue of fact remains as to whether U.S. Bank is obligated under the Agreement to defend and indemnify SPG against AlexSam's claim and will decline to grant summary judgment in favor of U.S. Bank on this basis.

CONCLUSION

The Court has considered all the arguments of the parties, including those not expressly referenced.  SPG's motion for summary judgment against U.S. Bank is DENIED.  U.S. Bank's request for summary judgment pursuant to Rule 56(f)(1) is DENIED.  The Clerk is respectfully directed to terminate the motion (Doc 65, 73).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
       July 6, 2022